978 F.2d 996
 24 Fed.R.Serv.3d 293, 15 Employee Benefits Cas. 2957
 A.V. CONSULTANTS, INCORPORATED, Plaintiff-Appellant,
v.
Thomas V. BARNES, individually and in his capacity as Mayor,
City of Gary, Indiana, City of Gary, Indiana, Rayfield
Fisher, individually and in his capacity as Risk Manager for
the City of Gary, Indiana, et al., Defendants-Appellees.
 No. 91-2480.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 4, 1992.
Decided Nov. 2, 1992.
Rehearing Denied Dec. 9, 1992.
 
 Douglas M. Grimes (argued), Gary, Ind., for plaintiff-appellant.
 MacArthur Drake (argued), Gary, Ind., Richard F. McDevitt (argued), Munster, Ind., for defendants-appellees Thomas V. Barnes, Rayfield Fisher and City of Gary, Ind.
 Matthew F. Kennelly (argued), Cotsirilos, Stephenson, Tighe & Streicker, Chicago, Ill., for defendants-appellees Ins. Ben. Adm'rs, Inc. and Dave Baker.
 Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Senior Circuit Judge.
 
 
 1
 Plaintiff appeals the district court's grant of summary judgment in favor of defendants on claims of breach of contract and interference with contract. We affirm.
 
 I. BACKGROUND
 
 2
 In 1983 the City of Gary, Indiana instituted a self-funded employee insurance plan. The City contracted with an outside company to operate the plan and to consult on its functioning. In insurance jargon, the City became a "plan sponsor" and the outside company a "third party administrator." In May 1987 the City replaced the third party administrator with A.V. Consultants, Inc. ("AVC"), a Pennsylvania corporation. AVC became the "plan supervisor."
 
 
 3
 As plan supervisor, AVC provided consulting services to the City on its employee benefit plan and had the duty of arranging for a third party administrator to operate the plan. AVC subcontracted with Comprehensive Benefits Service Company, Inc., another Pennsylvania corporation, to be the claims administrator.
 
 
 4
 The contract between the City and AVC was for a four-year term but gave either party the unconditional right to terminate the contract. The relevant section read:
 
 
 5
 This Agreement shall be effective for a period of four years from the effective date of the Agreement and shall be renewed for additional one year periods upon the mutual agreement of the parties. This Agreement may be terminated by either party for any reason by written notice to the other party at least sixty (60) days prior to the renewal date of the Agreement.
 
 
 6
 Several months after the contract was signed, a new administration was elected and in January 1988 Thomas Barnes assumed office as Mayor of Gary and Rayfield Fisher was appointed the City's Risk Manager. Barnes and Fisher are both Indiana residents. As Risk Manager, Fisher supervised the City's employee insurance plans and chaired the Risk Management Committee.
 
 
 7
 The new administration soon expressed dissatisfaction with AVC's performance. In July 1988, with authorization of the Risk Management Committee and the Corporation Counsel, Fisher sent written notice to AVC notifying the company that the City was terminating the contract. Thereafter, the City hired Insurance Benefit Administrators, Inc. ("IBA"), an Illinois firm, as third party administrator. Dave Baker, an Indiana resident, was vice-president of sales for IBA.
 
 II. PROCEDURE
 
 8
 In March 1989, AVC instituted this lawsuit. In their four-count complaint, as amended, AVC charged: 1) the City with breach of contract; 2) Fisher with interference with contractual relations; 3) Baker and IBA with interference with contractual relations; 4) Barnes, the City, Fisher, IBA, and Baker with violation of AVC's First Amendment right to freedom of association and AVC's Fourteenth Amendment rights of due process and equal protection of the law.
 
 
 9
 In December 1989, the court dismissed counts two and four for failure to state a claim upon which relief may be granted. The Appellant has not challenged the court's decision. As the complaint then raised no issues under federal substantive law, the court based its jurisdiction on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff claimed damages in excess of $50,000. The court also chose Indiana law to govern the case, a choice that is not disputed on appeal.
 
 
 10
 After discovery was completed, Appellees moved for summary judgment. In support of their motion for summary judgment, the City argued that AVC had suffered no monetary loss from the City's alleged breach of contract. AVC's response was that their damage came from the City's failure to pay damages upon termination of the contract. AVC also filed for summary judgment.
 
 
 11
 Under a provision entitled "Termination of the Agreement," the contract between AVC and the City provided that "[t]he Plan Sponsor shall be fully responsible for the balance of the administrative fees due for the contract period should they [sic] desire to terminate the Agreement prior to the end of the four year term of the contract." The Appellant interprets this clause as calling for liquidated damages.
 
 
 12
 The district court found the City had not breached the contract, as it was terminable at will. Further, the court held that the Appellant completely failed in his proof of damages under the contract.
 
 
 13
 Referring to the "liquidated damages" clause, the court interpreted the language to mean the City had to compensate AVC for services rendered up to the time of termination. The Appellant made no allegation that the City had failed to pay for services rendered. Alternatively, the court declared that if the contract clause was interpreted as calling for liquidated damages, such damages would be void as a penalty. The court felt the liquidated damages interpretation would compensate AVC for its expected profit plus the value of its services; the court stated such damages were disproportionate to the loss and were therefore penal.
 
 
 14
 Considering damages to be an essential element of an action for breach of contract, and finding Appellant suffered no damages, the court held there was no genuine issue of material fact requiring trial on AVC's claim against the City, Barnes, and Fisher.
 
 
 15
 Similarly, the district court held that the Appellant's failure to support damages as a genuine issue also doomed its claim against IBA and Baker for tortious interference with AVC's contractual relationship with the City. In addition, the court noted that under Indiana law as it then existed contracts that are terminable at will cannot serve as the basis of an action for interference with contract. Additionally, the court noted that the record contained no suggestion of any intentional, bad faith maneuvering by IBA or Baker to induce the City to breach the contract. The court thus held there was no genuine issue of material fact for the jury.
 
 
 16
 Given the court's conclusion that the Appellees should prevail on their motions, the district court considered the Appellant's motion for summary judgment to be moot. The court therefore granted all of the Appellees' summary judgment motions and on May 23, 1991, entered judgment in Appellees' favor.
 
 
 17
 Appellant filed his notice of appeal on June 20, 1991. We base our jurisdiction on 28 U.S.C. § 1291.
 
 
 18
 On appeal, AVC argues these three points: 1) There was a genuine issue of material fact as to whether a valid contract existed between the City of Gary and AVC, and thus summary judgment should not have been granted; 2) The liquidated damages provision of the contract was not a penalty; and 3) Indiana law prohibits intentional, unjustified interference with a contract terminable at will. We are also faced with motions by Appellees IBA and Baker for imposition of sanctions on Appellant AVC pursuant to Federal Rule of Appellate Procedure 38, and by AVC for Rule 38 sanctions against IBA and Baker. We will address each of these issues in turn.
 
 III. ANALYSIS
 
 19
 Federal Rule of Civil Procedure 56 provides for summary judgment, the purpose of which is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Fed.R.Civ.P. 56 advisory committee's note to 1963 Amendment of subdivision (e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 
 20
 A typical sequence of a summary judgment motion is this: 1) After discovery is completed, a party makes a properly supported motion for summary judgment; 2) The adverse party sets forth specific facts in an attempt to show there is a genuine issue for trial; and 3) The judge grants summary judgment "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
 
 
 21
 In attempting to show there is a genuine issue for trial, the party opposing the summary judgment motion "may not rest upon the mere allegations or denials of [his or her] pleading." Fed.R.Civ.P. 56(e). See also Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Instead, that party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also Anderson, 477 U.S. at 256, 106 S.Ct. at 2514.
 
 
 22
 The trial judge's task in determining if there is a need for a trial is to decide, "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250, 106 S.Ct. at 2511. A factual dispute is only an issue, however, if it is material to the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248, 106 S.Ct. at 2510.
 
 
 23
 Local Rule 11 supplements Federal Rule 56 in the court below. In response to the summary judgment motion, the adverse party has fifteen days in which to file an opposing brief and statement of genuine issues. The court will assume the facts as claimed by the moving party are admitted to exist without controversy, "except as and to the extent that such facts are actually and in good faith controverted" by this statement. N.D.Ind.R. 11. Thus, failure to dispute a fact asserted by the movant establishes the truth of that fact for summary judgment purposes.
 
 
 24
 In reviewing a district court's grant of summary judgment, we review de novo the record and the controlling law. Appley v. West, 929 F.2d 1176, 1179 (7th Cir.1991). We will uphold the entry of summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.
 
 
 25
 With these procedural rules in mind, we turn to the Appellant's arguments.
 
 
 26
 A. Was there a genuine issue of material fact as to whether a valid contract existed?
 
 
 27
 Appellant argues there was a genuine issue of material fact as to whether a valid enforceable contract existed between the City of Gary and AVC. This issue, the Appellant contends, precluded the grant of summary judgment.
 
 
 28
 It is certainly true that the existence of a valid contract is a material issue in this lawsuit. It is also true that this issue was disputed. In the memorandum accompanying their motion for summary judgment, Appellees Barnes, the City, and Fisher argued that the contract between the City and AVC was void as a matter of Indiana law. Appellees contended the person who executed the contract did not have the authority to bind the City to those agreements.
 
 
 29
 In response, AVC argued that a valid contract did exist--a position AVC has taken from the beginning of this litigation. In its brief before this court, Appellant also acknowledges the at-will nature of the contract and acknowledges that the City "properly terminated the contract."
 
 
 30
 The district court, in ruling on the summary judgment motions, assumed arguendo that a valid contract existed. In Anderson, the Supreme Court instructed trial judges that in summary judgment rulings, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." 477 U.S. at 255, 106 S.Ct. at 2513. See also Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356 (inferences drawn from underlying facts to be viewed in light most favorable to party opposing motion).
 
 
 31
 In adopting AVC's position, the position of the initial nonmoving party, the court below was simply following the rules set forth by the Supreme Court. We decline to reverse the district court for doing so.
 
 
 32
 B. Were the liquidated damages a penalty?
 
 
 33
 The district court, argues Appellant, also erred in ruling that the liquidated damages provision of the contract was a penalty. Thus, Appellant contends, summary judgment should not have been granted on the breach of contract claim. To evaluate this argument, we turn to Indiana law.
 
 
 34
 The Indiana Supreme Court recognizes the validity of contractual provisions for liquidated damages where damages are hard to calculate and the liquidated damages themselves are not unreasonable:
 
 
 35
 It may be said that if the actual damages are uncertain or difficult to ascertain or prove or are of a purely speculative character and the contract furnishes no data for their ascertainment, the provision will, as a general rule, be held to be one for liquidated damages, at least if the sum contracted to be paid does not appear to be unreasonable in amount.
 
 
 36
 Raymundo v. Hammond Clinic Ass'n, 449 N.E.2d 276, 283 (Ind.1983) (quoting Beiser v. Kerr, 107 Ind.App. 1, 20 N.E.2d 666, 669 (1939)). See also Harris v. Primus, 450 N.E.2d 80, 83 (Ind.Ct.App.1983) (absent evidence showing unreasonable liquidated damages, such damages are acceptable).
 
 
 37
 But what is an unreasonable amount? The Indiana Supreme Court has indicated that damages are unreasonable when they are "grossly disproportionate to the loss which may result from the breach" or "unconscionably in excess of the loss sought to be averted." Raymundo, 449 N.E.2d at 283. See also Skendzel v. Marshall, 261 Ind. 226, 301 N.E.2d 641, 645 (1973), cert. denied, 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974) (unreasonable damages are those disproportionate to loss actually suffered).
 
 
 38
 Where the liquidated damages are grossly disproportionate they no longer serve to compensate the injured party but instead serve as a penalty on the breaching party. In such a situation, Indiana courts will not enforce the liquidated damages provision. Hahn v. Drees, Perugini & Co., 581 N.E.2d 457, 463 (Ind.Ct.App.1991) (court refuses to enforce treble damages bearing no reasonable relationship to amount of damages incurred); School City of East Chicago v. East Chicago Fed'n of Teachers, 422 N.E.2d 656 (Ind.Ct.App.1981) (court will not enforce private contract imposing penalty for breach).
 
 
 39
 As to whether or not the provision is a penalty or damages, that is a question of law solely for the court. Hahn, 581 N.E.2d at 463; Nylen v. Park Doral Apartments, 535 N.E.2d 178, 184 (Ind.Ct.App.1989); Mandle v. Owens, 164 Ind.App. 607, 330 N.E.2d 362, 364 (1975), transfer denied, 265 Ind. 252, 353 N.E.2d 465 (1976).
 
 
 40
 In this case, the district court held that the liquidated damages provision was a penalty. If the City were to pay AVC the balance of the administrative fees due for the remaining contract period, even though the City was no longer employing AVC, then AVC would be receiving its expected profit plus the value of its services--services AVC was free to sell elsewhere. These damages would certainly be disproportionate to AVC's loss. See Prudential Ins. Co. v. Executive Estates, Inc., 174 Ind.App. 674, 369 N.E.2d 1117, 1133 (1977) (gross income represents windfall to plaintiff).
 
 
 41
 The district court noted, moreover, that aside from the unenforceable liquidated damages provision of the contract, Appellant presented nothing outside the pleadings that allowed any inference of damage. As damages are an essential element of an action for breach of contract under Indiana law, Strong v. Commercial Carpet Co., 163 Ind.App. 145, 322 N.E.2d 387, 391 (1975), and Appellant failed to show any, summary judgment for the City on breach of contract was appropriate.
 
 
 42
 C. Does Indiana allow a cause of action for intentional, unjustified interference with an at-will contract?
 
 
 43
 AVC contends that in granting summary judgment on the claim of interference with contract the district court based its decision upon what is now outdated law. The Appellant is partially correct. At the time the court ruled, the law in Indiana held that an action for tortious interference with a contractual relationship could not be maintained when the contract at issue was terminable at will. That is no longer the case.
 
 
 44
 One week after the district court issued its opinion, the Indiana Supreme Court changed the law. In Bochnowski v. Peoples Federal Savings & Loan Ass'n, 571 N.E.2d 282 (Ind.1991), the state's highest court held that a contract, terminable at will, may form the basis of an action for interference with a contractual relationship. Id. at 284.
 
 
 45
 This change in Indiana law, does not, however, help the Appellant's cause. In Indiana the elements of an action for tortious interference with contract are: "(1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." Biggs v. Marsh, 446 N.E.2d 977, 983 (Ind.Ct.App.1983). See also Daly v. Nau, 167 Ind.App. 541, 339 N.E.2d 71, 76 n. 6 (1975).
 
 
 46
 In ruling on the motion for summary judgment, the district court noted that the Appellant failed to support two of the necessary five elements as genuine issues. As discussed above, the court found Appellant had suffered no damages from the City's termination of the contract. The Appellant also failed to sufficiently suggest intentional, bad faith maneuvering by IBA and Baker to induce the City to breach the contract.
 
 
 47
 Local Rule 11, as outlined earlier, states that unless controverted, the movant's statement of facts on a summary judgment motion will be admitted to exist by the district court. Our court, on numerous occasions, has upheld the strict application of such local rules. See, e.g., Appley v. West, 929 F.2d 1176, 1179 (7th Cir.1991); Skagen v. Sears, Roebuck & Co., 910 F.2d 1498, 1500 (7th Cir.1990); Bell, Boyd & Lloyd v. Tapy, 896 F.2d 1101, 1103 (7th Cir.1990).
 
 
 48
 In their motion for summary judgment, Appellees stated that neither Baker nor anyone from IBA ever "requested, recommended, or pressured the City to terminate the agreement." The Appellees further stated that the City's decision to terminate the contract "was not based in any way on any request, recommendation, or suggestion by Baker or anyone from IBA."
 
 
 49
 In response, AVC failed to controvert any of Appellees' statements, even by assertion. The Appellees' statements, therefore, were established as true for summary judgment purposes.
 
 
 50
 Failing to support interference as a genuine issue, AVC had no cause of action under Indiana law. See Bochnowski, 571 N.E.2d at 285 ("The plaintiff bringing such an action ... must be prepared to show that the defendant interferer acted intentionally and without a legitimate business purpose."); Monarch Indus. Towel & Uniform Rental, Inc. v. Model Coverall Serv., Inc., 178 Ind.App. 235, 381 N.E.2d 1098, 1099 (1978) (judgment for defendant on plaintiff's failure to prove intentional inducement to breach contract).
 
 
 51
 Either of the Appellant's failures are enough to doom the claim of intentional interference. The district court's observation regarding the at-will nature of the contract was an additional, independent ground for granting summary judgment. That Indiana law has changed, in that one aspect, does not necessitate a change in the decision below. As the Supreme Court has noted, when a plaintiff fails on even one element of a claim, summary judgment is appropriate:
 
 
 52
 In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.
 
 
 53
 Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. We therefore affirm the district court's grant of summary judgment to Appellees IBA and Baker on the intentional interference claim.
 
 D. Sanctions
 
 54
 Federal Rule of Appellate Procedure 38 states: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the Appellee." Appellees IBA and Baker have moved this court to award sanctions, including reasonable attorney fees, in their favor and against Appellant AVC. In support of their motion, IBA and Baker claim the outcome of this appeal was a foregone conclusion and therefore frivolous.
 
 
 55
 In response to Appellees' Rule 38 motion, Appellant filed its own Rule 38 motion, contending the first Rule 38 motion was filed in bad faith and represented an attempt to pressure Appellant to withdraw its appeal. For the reasons set forth below, we deny both Rule 38 motions.
 
 
 56
 The purposes of Rule 38 are 1) to compensate winners of judgments in the district court for defending against meritless arguments on appeal, and 2) to deter such appeals so that the court may hear cases worthy of consideration. A-Abart Elec. Supply, Inc. v. Emerson Elec. Co., 956 F.2d 1399, 1406 (7th Cir.1992).
 
 
 57
 Determining whether to award sanctions is a two-step process. First, the court must determine whether the appeal is frivolous. If so, the court must then decide if sanctions are appropriate. See id; Williams v. Leach, 938 F.2d 769, 775 (7th Cir.1991).
 
 
 58
 A losing appeal, however, is not necessarily a frivolous appeal. Ruderer v. Fines, 614 F.2d 1128, 1132 (7th Cir.1980). An appeal is deemed frivolous "when the result is foreordained by the lack of substance to the Appellant's arguments," Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 938 (7th Cir.1989), or with "no reasonable expectation of altering the district court's judgment and for the purpose of delay or harassment or out of sheer obstinacy," Ruderer, 614 F.2d at 1132, or when the appeal "merely restates arguments that the district court properly rejected," Mestayer v. Wisconsin Physicians Serv. Ins. Corp., 905 F.2d 1077, 1081 (7th Cir.1990) (quoting Mays v. Chicago Sun-Times, 865 F.2d 134, 138 (7th Cir.1989)).
 
 
 59
 AVC's appeal does not quite reach the level of frivolity or redundancy necessary for Rule 38 sanctions; Appellant presented legitimate arguments concerning the recent change in Indiana law and the district court's possible misinterpretation of the liquidated damages clause. We therefore dismiss Appellees' motion to impose Rule 38 sanctions on Appellant. As for Appellant's Rule 38 motion, it is true that "[h]air-trigger motions for sanctions by lawyers who do not recognize the difference" between "vigorous advocacy ... and frivolous conduct" place those lawyers at risk of sanctions. Alliance to End Repression v. City of Chicago, 899 F.2d 582, 583 (7th Cir.1990). In this case, however, Appellees' motion is much closer to vigorous advocacy than frivolous conduct. We thus dismiss Appellant's motion to impose Rule 38 sanctions on the Appellees.
 
 IV. CONCLUSION
 
 60
 For the reasons stated above, we affirm the district court's grant of summary judgment for Appellees and dismiss both Rule 38 motions for sanctions.